## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| WILDEARTH GUARDIANS; and PHYSICIANS FOR SOCIAL RESPONSIBILITY,<br><br>　　　　　　　　　Plaintiffs,<br><br>v.<br><br>DAVID BERNHARDT, Secretary, U.S. Department of the Interior; WILLIAM PERRY PENDLEY, Acting Director, U.S. Bureau of Land Management; and U.S. BUREAU OF LAND MANAGEMENT,<br><br>　　　　　　　　　Defendants. | No. 1:20-cv-00056-RC |

## AMERICAN PETROLEUM INSTITUTE'S REPLY TO PLAINTIFFS' RESPONSE TO MOTION FOR VOLUNTARY PARTIAL REMAND

Steven J. Rosenbaum
Bradley K. Ervin
COVINGTON & BURLING, LLP
One CityCenter
850 Tenth St., N.W.
Washington, D.C. 20001
Phone:  (202) 662-6000
Fax:  (202) 662-6291
srosenbaum@cov.com

September 21, 2020

*Attorneys for Intervenor-Defendant American Petroleum Institute*

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

ARGUMENT ..................................................................................................................... 2

I.      Vacatur Is Not Available On Federal Defendants' Requested Partial Voluntary
        Remand. ............................................................................................................... 2

II.     Remand Without Vacatur Is Appropriate On Federal Defendants' Motion For
        Voluntary Partial Remand.................................................................................... 3

        A.      The APA Confers Authority To Remand The Leasing Decisions Without
                Vacating The Leases. ............................................................................... 4

        B.      The Circumstances In This Case Support Remand Without Vacatur..................... 8

III.    Plaintiffs Fail To Establish An Entitlement To Extraordinary Injunctive Relief. ............ 12

        A.      Plaintiffs' Request For Vacatur Constitutes A Request For Injunctive
                Relief. ...................................................................................................... 13

        B.      Plaintiffs Fail To Establish An Entitlement To Injunctive Relief........................ 14

IV.     Federal Defendants Have Not Made The Determinations Necessary To Suspend
        The Challenged Leases. ........................................................................................ 16

CONCLUSION................................................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

*Air Transp. Ass'n of Am., Inc. v. Export-Import Bank of the U.S.*,
840 F. Supp. 2d 327 (D.D.C. 2012) ........................................................ 15

*Air Transp. Ass'n of Am., Inc. v. U.S. Dep't of Agric.*,
317 F. Supp. 3d 385 (D.D.C. 2018) ........................................................ 10

*Alliance for the Wild Rockies v. Savage*,
375 F. Supp. 3d 1152 (D. Mont. 2019) ................................................ 6, 12

*Allied-Signal, Inc. v. U.S. Nuclear Reg. Comm'n*,
988 F.2d 146 (D.C. Cir. 1993) .......................................................... 4, 5, 8

*Amoco Prod. Co. v. Vill. of Gambell*,
480 U.S. 531 (1987) ......................................................................... 12, 14

*Apache Corp. v. FERC*,
627 F.3d 1220 (D.C. Cir. 2010) .............................................................. 6

*Baltimore Gas & Elec. Co. v. Natural Resources Defense Council, Inc.*,
462 U.S. 87 (1983) ................................................................................. 6

*Banks v. Warner*,
No. 94-56732, 1995 WL 465773 (9th Cir. Aug. 7, 1995) ........................ 16

*Bauer v. DeVos*,
332 F. Supp. 3d 181 (D.D.C. 2018) .......................................................... 9

*Black Oak Energy, LLC v. FERC*,
725 F.3d 230 (D.C. Cir. 2014) ............................................................. 6, 9

*Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs*,
781 F.3d 1271 (11th Cir. 2015) .............................................................. 5

*California Co. v. Udall*,
296 F.2d 384 (D.C. Cir. 1961) .............................................................. 17

*Carpenters Indus. Council v. Salazar*,
734 F. Supp. 2d 126 (D.D.C. 2010) ..................................................... 2, 3

*Cent. & S.W. Servs., Inc. v. EPA*,
220 F.3d 683 (5th Cir. 2000) ................................................................. 5

*Cent. Maine Power Co. v. FERC*,
252 F.3d 34 (1st Cir. 2001) ................................................................... 5

*Cottonwood Envtl. Law Ctr. v. U.S. Forest Serv.*,
789 F.3d 1075 (9th Cir. 2015) .............................................................. 14

*Del. Dep't of Nat. Res. & Envt'l Control v. U.S. Army Corps of Eng'rs*,
681 F. Supp. 2d 546 (D. Del. 2010) ...................................................... 16

*Delta Air Lines, Inc. v. Export-Import Bank of the U.S.*,
  718 F.3d 974 (D.C. Cir. 2013) ................................................................................. 6

*Dep't of Homeland Security v. Regents of the Univ. of Cal.*,
  140 S. Ct. 1891 (2020) .................................................................................... 6, 7

*Diné Citizens Against Ruining Our Env't v. Jewell*,
  No. 15-cv-0209, 2015 WL 4997207 (D.N.M. Aug. 14, 2015) ............................... 16

*Eco Tour Adventures, Inc. v. Zinke*,
  249 F. Supp. 3d 360 (D.D.C. 2017) ......................................................................... 16

*Fla. Power & Light Co. v. Lorion*,
  470 U.S. 729 (1985) ................................................................................................. 5

*ForestKeeper v. La Price*,
  270 F. Supp. 3d 1182 (E.D. Cal. 2017) ................................................................... 13

*Fox Television Stations, Inc. v. FCC*,
  280 F.3d 1027 (D.C. Cir. 2002) ............................................................................... 10

*Fund for Animals v. Frizzell*,
  530 F.2d 982 (D.C. Cir. 1975) ................................................................................. 15

*Grand Council of Crees (of Quebec) v. FERC*,
  198 F.3d 950 (D.C. Cir. 2000) ................................................................................... 6

*Habitat for Horses v. Salazar*,
  745 F. Supp. 2d 438 (S.D.N.Y. 2010) ..................................................................... 11

*Hoyl v. Babbitt*,
  129 F.3d 1377 (10th Cir. 1997) ............................................................................... 18

*Idaho ex rel. Idaho Pub. Util. Comm'n v. Interstate Commerce Comm'n*,
  35 F.3d 585 (D.C. Cir. 1994) ..................................................................................... 5

*Idaho Power Co. v. FERC*,
  312 F.3d 454 (D.C. Cir. 2002) ................................................................................. 11

*Ineos USA LLC v. FERC*,
  940 F.3d 1326 (D.C. Cir. 2019) ............................................................................... 16

*McDonald's Corp. v. Robertson*,
  147 F.3d 1301 (11th Cir. 1998) ............................................................................... 14

*Mobil Oil Expl. & Producing Se., Inc. v. United States*,
  530 U.S. 604 (2000) ................................................................................................. 10

*Monsanto Co. v. Geertson Seed Farms*,
  561 U.S. 139 (2010) ................................................................................................. 14

*Mylan Pharms., Inc. v. Shalala*,
  81 F. Supp. 2d 30 (D.D.C. 2000) ............................................................................. 15

*N. Coast Rivers All. V. U.S. Dep't of the Interior*,
  No. 16-cv-00307, 2016 WL 8673038 (E.D. Cal. Dec. 16, 2016) ............................... 4

iii

*Nat'l Org. of Veterans' Advocates, Inc. v. Sec'y of Veterans Affairs*,
260 F.3d 1365 (Fed. Cir. 2001)................................................................................... 5

*Nat'l Parks Conservation Ass'n v. Jewell*,
62 F. Supp. 3d 7 (D.D.C. 2014) .................................................................................. 3

*Nat'l Wildlife Fed'n v. Espy*,
45 F.3d 1337 (9th Cir. 1995) ................................................................................. 4, 5

*Native Vill. of Point Hope v. Salazar*,
730 F. Supp. 2d 1009 (D. Alaska 2010) ..................................................................... 5

*Natural Res. Def. Council v. U.S. EPA*,
808 F.3d 556 (2nd Cir. 2015).................................................................................... 5

*Newdow v. Bush*,
355 F. Supp. 2d 265 (D.D.C. 2005).......................................................................... 15

*Nolen v. FedEx Servs.*,
No. 13-6245, 2014 WL 12887530 (6th Cir. May 28, 2014).................................... 16

*Open Top Sightseeing USA v. Mr. Sightseeing, LLC*,
48 F. Supp. 3d 87 (D.D.C. 2014) .............................................................................. 15

*PGBA, LLC v. United States*,
389 F.3d 1219 (Fed. Cir. 2004)................................................................................ 13

*Pit River Tribe v. U.S. Forest Serv.*,
615 F.3d 1069 (9th Cir. 2010) ................................................................................. 10

*Radio-Television News Dirs. Ass'n v. FCC*,
184 F.3d 872 (D.C. Cir. 1999).................................................................................... 8

*Samuels v. Mackell*,
401 U.S. 66 (1971)................................................................................................... 13

*San Miguel Hosp. Corp. v. NLRB*,
697 F.3d 1181 (D.C. Cir. 2012)................................................................................ 10

*Sierra Club v. U.S. Dep't of Agric.*,
841 F. Supp. 2d 349 (D.D.C. 2012)............................................................................ 5

*Sierra Club v. Van Antwerp*,
560 F. Supp. 2d 21 (D.D.C. 2008).............................................................................. 1

*Sierra Club, Inc. v. Bostick*,
539 F. App'x 885 (10th Cir. 2013............................................................................ 12

*Stand Up for California! v. U.S. Dep't of Interior*,
879 F.3d 1177 (D.C. Cir. 2018).................................................................................. 6

*Stand Up for California! v. U.S. Dep't of Interior*,
No. 12-cv-2039, 2013 WL 12203229 (D.D.C. Dec. 16, 2013) .............................. 12

*\*Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*,
282 F. Supp. 3d 91 (D.D.C. 2017)......................................................... 5, 8, 9, 10, 12

*Susquehanna Int'l Grp., LLP v. SEC*,
    866 F.3d 442 (D.C. Cir. 2017) ............................................................................. 6

*Swindol v. Aurora Flight Scis. Corp.*,
    805 F.3d 516 (5th Cir. 2015) ............................................................................. 16

*Tulare Cty. v. Bush*,
    306 F.3d 1138 (D.C. Cir. 2002) .......................................................................... 6

*U.S. Postal Serv. v. Gregory*,
    534 U.S. 1 (2001) ................................................................................................ 9

*U.S. Sugar Corp. v. EPA*,
    830 F.3d 579 (D.C. Cir. 2016) ........................................................................... 6

*Union Oil Co. of Cal. v. Morton*,
    512 F.2d 743 (9th Cir. 1975) ............................................................................ 10

*Vanda Pharms., Inc. v. FDA*,
    No. 19-cv-301, 2019 WL 1198703 (D.D.C. March 14, 2019) ........................... 3, 4

*Weinberger v. Romero-Barcelo*,
    456 U.S. 305 (1982) .......................................................................................... 14

*Western Watersheds Project v. Zinke*,
    441 F. Supp. 3d 1042 (D. Idaho 2020) ............................................................... 7

*WildEarth Guardians v. BLM*,
    870 F.3d 1222 (10th Cir. 2017) ..................................................................... 5, 13

*WildEarth Guardians v. BLM*,
    No. 18-cv-73, 2020 WL 2104760 (D. Mont. May 1, 2020) ................................ 8

*WildEarth Guardians v. Conner*,
    920 F.3d 1256 (10th Cir. 2019) .......................................................................... 9

*WildEarth Guardians v. Zinke*,
    368 F. Supp. 3d 41 (D.D.C. 2019) ........................................................ 1, 4, 5, 7, 8, 13

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ................................................................................. 13, 14, 16

## Statutes

30 U.S.C. § 181 .................................................................................................... 17

30 U.S.C. § 209 .................................................................................................... 17

5 U.S.C. § 702 ................................................................................................... 4, 13

5 U.S.C. § 706 ................................................................................................ 2, 3, 4

## Regulations

43 C.F.R. § 3103.4 ............................................................................................ 17, 18

43 C.F.R. § 3103.4-4 ......................................................................................... 17, 18

**INTRODUCTION**

The Federal Defendants ask the Court to enter a voluntary remand without vacatur of the National Environmental Policy Act ("NEPA") review documents "for twenty-four of the twenty-seven oil and gas leasing decisions challenged in this case, so that BLM may conduct further NEPA analysis." Fed. Defs.' Motion (Dkt. No. 41) at 2. That further NEPA analysis will "consider new evidence"—this Court's decision in *WildEarth Guardians v. Zinke*, 368 F. Supp. 3d 41 (D.D.C. 2019)—that became available after (or mere days before) the challenged leasing decisions. *See* Fed. Defs.' Motion at 5–6 & n.4 (quoting *Sierra Club v. Van Antwerp*, 560 F. Supp. 2d 21, 23 (D.D.C. 2008)). During this further NEPA review, Federal Defendants ask that the more than one thousand oil and gas leases issued to private leaseholders in the challenged lease sales remain in effect, consistent with established law and practice on voluntary remands. *See id*. at 2.

Plaintiffs do not object to a voluntary remand of the NEPA analyses for further review. *See* Pls.' Resp. (Dkt. No. 42) at 1. Instead, Plaintiffs seek "conditions" upon the remand, asking the Court to: (1) vacate the leases authorized by the challenged leasing decisions, (2) enjoin Defendant Bureau of Land Management ("BLM") from approving new drilling permits on the leases pending completion of Federal Defendants' proposed further NEPA review, or (3) direct Federal Defendants to suspend the leases pending completion of the NEPA processes on remand. *See id*. at 5–10.

Plaintiffs' arguments in support of these conditions rest on mischaracterizations of governing judicial, statutory, and regulatory authority, and improper prejudgment of BLM's remand NEPA process and the merits of their existing NEPA claims without the benefit of merits briefing or the administrative records upon which each of the twenty-four challenged leasing decisions issued. Because Plaintiffs' requested conditions cannot square with well-settled law or

1

the circumstances of this case, they should be rejected.  The Court should grant the Federal Government's motion for voluntary remand without waiver or condition.

## ARGUMENT

### I.  Vacatur Is Not Available On Federal Defendants' Requested Partial Voluntary Remand.

In response to the Federal Defendants' request that this Court remand certain challenged leasing decisions without vacatur of the underlying leases, Plaintiffs argue that vacatur is a common remedy upon remand of a challenged agency action.  But Plaintiffs rely on cases in which a court entered vacatur as a remedy *after* concluding on the merits that an agency action violated applicable law.  *See* Pls.' Resp. at 5, 7–8 (arguing "[w]here an agency has violated NEPA, vacatur is the normal remedy").  Although the Federal Defendants have acknowledged that the challenged leasing decisions it seeks to have remanded in this case "are similar in some respects to those the Court considered in *Zinke*," Fed. Defs.' Motion at 6, the administrative record for these sales have not been lodged, nor have the merits of Plaintiffs' NEPA challenges been briefed or determined.  At this stage, Federal Defendants seek only to consider this Court's intervening decision in *WildEarth Guardians v. Zinke*, which issued after (or mere days before) Federal Defendants issued the challenged leasing decisions.  *See* Fed. Defs.' Mot. at 5–6 & n.4. The Administrative Procedure Act ("APA")—the source of Plaintiffs' cause of action—does not authorize a court to vacate upon a voluntary remand in these circumstances.

The APA empowers a reviewing court to "hold unlawful and set aside agency action *found to be* . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A) (emphasis added).  "In making the[se] . . . determinations, the court shall review the whole record . . . ."  *Id*. § 706.  *See also Carpenters Indus. Council v. Salazar*, 734 F. Supp. 2d 126, 135 (D.D.C. 2010) (rejecting request for vacatur where agency noted

probable legal error in critical habitat designation following inspector general report); *see also id*. (explaining that 5 U.S.C. § 706 authorizes "a reviewing court to hold unlawful and set aside agency action . . . that ***it finds*** to be arbitrary [and] capricious" (emphasis original)).[1]

Absent the administrative records or merits briefing upon which a final determination of Plaintiffs' NEPA claims under the APA must rest, vacatur is neither available nor appropriate. *See*, *e.g.*, *Vanda Pharms., Inc. v. FDA*, No. 19-cv-301, 2019 WL 1198703, at *2 (D.D.C. March 14, 2019) ("[T]he Court has reason to question whether it has authority to vacate an agency action before issue has been joined, without an administrative record, and in the absence of a request for emergency relief[.]" (citing *Carpenters*, 734 F. Supp. 2d at 135–36)); *Nat'l Parks Conservation Ass'n v. Jewell*, 62 F. Supp. 3d 7, 14 (D.D.C. 2014) (explaining that court had authority to vacate on motion for voluntary remand because "[t]he court now has before it the full administrative record, as well as fully briefed cross-motions for summary judgment"). Plaintiffs' request for vacatur should therefore be rejected *ab initio*.

## II. Remand Without Vacatur Is Appropriate On Federal Defendants' Motion For Voluntary Partial Remand.

Even had the merits of Plaintiffs' NEPA claims been briefed or a NEPA violation established, a reviewing court is not required to vacate every agency decision that violates

---

[1] Contrary to Plaintiffs' suggestion, *see* Pls.' Resp. at 7, the court in *Carpenters* first indicated that it lacked authority under the APA to order vacatur "without an independent determination that the [agency's] action was not in accordance with law." *Carpenters*, 734 F. Supp. 2d at 135 (citing 5 U.S.C. § 706(2)). The court then further noted that vacatur in that case could violate APA notice-and-comment procedures required when an agency repeals a rulemaking. *See id*. at 135–36. The court did not limit its conclusion that it lacked authority to vacate merely to situations where a rulemaking repeal was at issue, and instead recognized caselaw that "provide compelling authority regarding the impropriety of judicial vacatur without a determination of the merits[.]" *Id*. at 133 n.7. Nor have subsequent courts read *Carpenters*' ruling to be as limited as Plaintiffs contend. *See infra*.

NEPA.  Rather, in *Allied-Signal, Inc. v. U.S. Nuclear Reg. Comm'n*, 988 F.2d 146, 151 (D.C. Cir. 1993), the D.C. Circuit made clear that courts can, and should, decline to vacate agency actions if certain criteria are met.  Under the *Allied-Signal* test, remand without vacatur is particularly appropriate where, as here, the alleged violation amounts merely to a failure fully to consider potential environmental impacts of a decision.  *See Zinke*, 368 F. Supp. 3d at 84 (explaining, *inter alia*, that "Plaintiffs challenge only one aspect of nine lease sales that otherwise complied with NEPA").[2]

### A.    The APA Confers Authority To Remand The Leasing Decisions Without Vacating The Leases.

While the APA provides that a reviewing court "shall . . . hold unlawful and set aside agency action . . . found to be arbitrary [or] capricious," 5 U.S.C. § 706(2)(A), it also makes clear that "[n]othing herein . . . affects . . . the power or duty of the court to . . . deny relief on any . . . appropriate . . . equitable ground," *id*. § 702.  Instead, "[a]lthough the . . . court has power to do so, it is not required to set aside every unlawful agency action.  The court's decision to grant or deny injunctive or declaratory relief under APA is controlled by principles of equity."  *Nat'l Wildlife Fed'n v. Espy*, 45 F.3d 1337, 1343 (9th Cir. 1995).  Under those principles, vacatur is

---

[2] While several district courts outside the D.C. Circuit have concluded that vacatur is available on a voluntary remand without a final determination on the merits, *but see supra* Section I, in determining whether to vacate upon a voluntary remand, those courts apply the *Allied-Signal* test "used to decide whether to vacate agency action after a ruling on the merits."  *N. Coast Rivers All. V. U.S. Dep't of the Interior*, No. 16-cv-00307, 2016 WL 8673038, at *6 (E.D. Cal. Dec. 16, 2016) (quotation and alteration omitted) (citing and applying *Allied-Signal* test).  *See also Vanda Pharms.*, 2019 WL 1198703, at *2 (assuming "the Court could vacate" the challenged agency action subject to remand, it would not "[u]nder the factors set out in *Allied-Signal*").  In other words, if the Court were authorized to impose vacatur as part of a voluntary remand, it still would be required to apply the *Allied-Signal* test to determine if vacatur is appropriate in this case.

not appropriate where "there is at least a serious possibility that the [agency] will be able to substantiate its decision on remand." *Allied-Signal*, 988 F.2d at 151.

The Courts of Appeals that have directly addressed the issue have uniformly followed the D.C. Circuit's lead and confirmed that "the remedy of remand without vacatur is within a reviewing court's equity powers under the APA." *Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs*, 781 F.3d 1271, 1289 (11th Cir. 2015) (quotation and alteration omitted); *see also WildEarth Guardians v. BLM*, 870 F.3d 1222, 1240 (10th Cir. 2017) (declining to vacate coal leases notwithstanding NEPA deficiency, and remanding to district court, which "may vacate . . ., or it might fashion some narrower form of injunctive relief based on equitable arguments"); *Natural Res. Def. Council v. U.S. EPA*, 808 F.3d 556, 584 (2nd Cir. 2015); *Cent. Maine Power Co. v. FERC*, 252 F.3d 34, 48 (1st Cir. 2001); *Nat'l Org. of Veterans' Advocates, Inc. v. Sec'y of Veterans Affairs*, 260 F.3d 1365, 1380 (Fed. Cir. 2001); *Cent. & S.W. Servs., Inc. v. EPA*, 220 F.3d 683, 692 (5th Cir. 2000); *Espy*, 45 F.3d at 1343. *Cf. Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985) ("[I]f the agency has not considered all relevant factors," then "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.").

Moreover, remand without vacatur is available to remedy deficiencies in an agency's NEPA review. *See, e.g., Zinke*, 368 F. Supp. 3d at 84–85; *Black Warrior Riverkeeper*, 781 F.3d at 1289–91; *Idaho ex rel. Idaho Pub. Util. Comm'n v. Interstate Commerce Comm'n*, 35 F.3d 585, 599 (D.C. Cir. 1994); *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 282 F. Supp. 3d 91, 108 (D.D.C. 2017); *Sierra Club v. U.S. Dep't of Agric.*, 841 F. Supp. 2d 349, 362–63 (D.D.C. 2012); *Native Vill. of Point Hope v. Salazar*, 730 F. Supp. 2d 1009, 1019 (D. Alaska 2010). Indeed, the cause of action for a NEPA claim is provided solely by the APA, *see, e.g.,*

*Tulare Cty. v. Bush*, 306 F.3d 1138, 1143 (D.C. Cir. 2002), and is therefore limited to the relief—and the equitable discretion—offered by the APA.    Because NEPA is "purely procedural" and does not "impose substantive duties mandating particular results," *Grand Council of Crees (of Quebec) v. FERC*, 198 F.3d 950, 959 (D.C. Cir. 2000) (quotation omitted); *see also e.g.*, *Baltimore Gas & Elec. Co. v. Natural Resources Defense Council, Inc.*, 462 U.S. 87, 97 (1983) ("Congress in enacting NEPA . . ., did not require agencies to elevate environmental concerns over other appropriate considerations."), there is no reason to exempt NEPA's requirements from the remedial discretion that courts routinely apply to violations of a wide variety of environmental and other statutes.[3]

Contrary to Plaintiffs' assertions, *see* Pls.' Resp. at 6–7, the Supreme Court's recent decision in *Department of Homeland Security v. Regents of the University of California*, 140 S. Ct. 1891 (2020), does not implicate this well-recognized remedial authority.  In that case, the Supreme Court did not consider the availability of remand without vacatur.  Rather, the peculiar facts of the case required the Court to determine which of two agency explanations for rescission of the Deferred Action for Childhood Arrivals ("DACA") program—the original explanation provided by the agency when the rescission first issued or a second explanation provided by the agency following a remand ordered by the district court—were properly before the Court in assessing the adequacy of the agency's reasoning under the APA.  *See id.* at 1907–09.

---

[3] *See*, *e.g.*, *Alliance for the Wild Rockies v. Savage*, 375 F. Supp. 3d 1152, 1155 (D. Mont. 2019) (remand consistent with "the policy underlying the Endangered Species Act"); *Stand Up for California! v. U.S. Dep't of Interior*, 879 F.3d 1177, 1190 (D.C. Cir. 2018) (Clean Air Act); *Susquehanna Int'l Grp., LLP v. SEC*, 866 F.3d 442, 451 (D.C. Cir. 2017) (Securities Exchange Act); *U.S. Sugar Corp. v. EPA*, 830 F.3d 579, 652 (D.C. Cir. 2016) (Clean Air Act); *Delta Air Lines, Inc. v. Export-Import Bank of the U.S.*, 718 F.3d 974, 978 (D.C. Cir. 2013) (Export-Import Bank Act); *Black Oak Energy, LLC v. FERC*, 725 F.3d 230, 244 (D.C. Cir. 2014) (Federal Power Act); *Apache Corp. v. FERC*, 627 F.3d 1220, 1223 (D.C. Cir. 2010) (Natural Gas Act).

In that context, the Court explained that "judicial review of agency action is limited to the grounds that the agency invoked when it took the action." *Id*. at 1907 (quotation omitted). While the agency may properly "elaborate later on" those grounds during a remand, the Court determined that the post-remand DACA rescission explanation was not properly before the Court because it included "separate and independently sufficient reasons" for the rescission that were "nowhere to be found in the" agency's original explanation. *Id*. at 1908.

Limited to identifying the appropriate agency reasoning for purposes of judicial review, *Department of Homeland Security* says nothing about the available remedies once the appropriately identified agency explanation is found insufficient. To the extent the Supreme Court subsequently upheld a district court order vacating the DACA rescission, it did so only after finding that the agency had "offer[ed] no reason" to support rescission of certain DACA provisions relating to deferral of deportation actions. *Id*. at 1912–13. Here, by contrast, mirroring their claims in *WildEarth Guardians v. Zinke*—and, indeed, quoting from the Court's decision in *Zinke*—Plaintiffs' complaint rests on an alleged "failure to **fully discuss** the environmental effects of th[e] lease sales." *Zinke*, 368 F. Supp. 3d at 84 (emphasis added). *See* Compl. (Dkt. No. 1), ¶¶ 100–20. Consistent with *Department of Homeland Security*, on remand the Federal Defendants may properly provide the allegedly absent fuller discussion of their original reasons for finding under NEPA that the challenged leasing decisions would not significantly impact the human environment.[4]

---

[4] Plaintiffs' reliance on two recent district court decisions from the Ninth Circuit (one of which is already on appeal), fares no better. Far from "directly analogous cases," Pls.' Resp. at 7, *Western Watersheds Project v. Zinke*, 441 F. Supp. 3d 1042 (D. Idaho 2020), involved a substantively invalid agency action, *see id*. at 1073, 1083, 1086–87, rather than a purely procedural NEPA violation that can readily be cured with further consideration and explanation, (continued…)

**B.    The Circumstances In This Case Support Remand Without Vacatur.**

In light of the Court's equitable authority under the APA, because (1) "there is at least a serious possibility that the [agency] will be able to substantiate its decision" on remand, and (2) vacatur will lead to impermissibly disruptive consequences in the interim, at most, a remand is appropriate. *Radio-Television News Dirs. Ass'n v. FCC*, 184 F.3d 872, 888 (D.C. Cir. 1999) (quoting *Allied-Signal*, 988 F.2d at 151). *See also Zinke*, 368 F. Supp. 3d at 84; *Standing Rock*, 282 F. Supp. 3d at 97.

The seriousness of the agency's failure depends upon its ability on remand to cure a defect. *See Zinke*, 368 F. Supp. 3d at 84–85 (declining to vacate leases despite "a serious failing" under NEPA (quotation omitted)); *Standing Rock*, 282 F. Supp. 3d at 102–03 ("[T]he Court's role here is not to determine the wisdom of agency action or to opine on its substantive effects. Instead, it must consider the [agency's] likelihood on remand of fulfilling NEPA's . . . requirements and justifying its prior decision.") (citation omitted). Here, the Court has not concluded that BLM violated NEPA. While the Federal Defendants have determined that the intervening decision in *WildEarth Guardians v. Zinke* "draws into question" the leasing decisions and therefore warrants further review, Fed. Defs.' Mot. at 5, Plaintiffs allege only discrete procedural violations under NEPA similar to, and relying upon, those asserted in *Zinke*. As before, the alleged procedural violations "consist[] merely of a failure to fully discuss the environmental effects of [the challenged] lease sales." *Zinke*, 368 F. Supp. 3d at 84. Because this is not a situation "in which the agency must redo its analysis from the ground up," *Standing Rock*, 282 F. Supp. 3d at 100, (quotation omitted), and "there is a nontrivial likelihood" that

---

and *WildEarth Guardians v. BLM*, No. 18-cv-73, 2020 WL 2104760 (D. Mont. May 1, 2020), involved an agency failure to conduct an analysis, "rather than . . . a flawed analysis," *id*. at *13.

Federal Defendants "could justify" the challenged leasing decisions, remand without vacatur would be appropriate under the first prong of the *Allied-Signal* test, *Bauer v. DeVos*, 332 F. Supp. 3d 181, 186 (D.D.C. 2018) (quotation omitted). *See also Black Oak Energy*, 725 F.3d at 244 (remanding where "plausible that FERC can redress its failure of explanation on remand while reaching the same result").

In Plaintiffs' view, vacatur is nonetheless necessary based on Plaintiffs' subjective characterization of BLM's environmental "fast-track" review on remand of the leasing decisions at issue in *Zinke*. *See* Pls.' Br. at 6, 8. The adequacy of BLM's thorough post-remand review is hotly contested between the parties, and remains pending before the Court in *Zinke*. *See WildEarth Guardians v. Bernhardt*, No. 16-cv-01724-RC, Dkt. Nos. 143, 147, 148, 150, 151, 157, 159, 160, 161, 162 (D.D.C.). At any rate, this Court may sufficiently address Plaintiffs' concerns about "relegat[ing] the remand process in this case to a paperwork exercise," Pls.' Resp. at 6, by directing the Federal Defendants "not to treat remand as an exercise in filling out the proper paperwork post hoc." *Standing Rock*, 282 F. Supp. 3d at 109.

Plaintiffs' insistence that such a directive is insufficient, *see* Pls.' Resp. at 6, rests on the assumption that BLM will violate NEPA during the remanded proceedings. *See* Pls.' Opp. at 8 (suggesting BLM will "fast-track analyses on remand" and arguing vacatur is necessary to "assur[e] that this pattern will not continue"). "In essence, WildEarth is saying that it does not trust" BLM to comply with the law, but courts "generally presume that government agencies comply with the law and NEPA creates no exception to this presumption." *WildEarth Guardians v. Conner*, 920 F.3d 1256, 1261 (10th Cir. 2019). *See also*, *e.g.*, *U.S. Postal Serv. v. Gregory*, 534 U.S. 1, 10 (2001) ("[A] presumption of regularity attaches to the actions of Government agencies[.]"); *San Miguel Hosp. Corp. v. NLRB*, 697 F.3d 1181, 1186–87 (D.C. Cir.

9

2012) (noting the "presumption of regularity that agency proceedings enjoy"); *Pit River Tribe v. U.S. Forest Serv.*, 615 F.3d 1069, 1082 (9th Cir. 2010) ("[W]e presume that agencies will follow the law."). In other words, Plaintiffs' speculative assumption that the Federal Defendants will violate NEPA on remand is both unwarranted and an improper basis for relief.

Remand without vacatur is adequately justified by Federal Defendants' ability to support their leasing decisions on remand because where, as here, the *Allied-Signal* test's "first prong . . . supports remand without vacatur, the second prong 'is only barely relevant.'" *Standing Rock*, 282 F. Supp. 3d at 108 (quoting *Fox Television Stations, Inc. v. FCC*, 280 F.3d 1027, 1049 (D.C. Cir. 2002)). *See also id.* (even where "the disruptive consequences of vacatur might not be great," remand is appropriate if the first prong is satisfied (quotation omitted)); *Air Transp. Ass'n of Am., Inc. v. U.S. Dep't of Agric.*, 317 F. Supp. 3d 385, 392 (D.D.C. 2018) (disruption "legally irrelevant" once first prong satisfied). But the disruptive consequences of vacating the more than one thousand oil and gas leases issued in the twenty-four leasing decisions implicated by the Federal Defendants' remand request further supports remand without vacatur.

Leases are both contracts and property, *see Mobil Oil Expl. & Producing Se., Inc. v. United States*, 530 U.S. 604, 607–08 (2000); *Union Oil Co. of Cal. v. Morton*, 512 F.2d 743, 747 (9th Cir. 1975), and a court should be loathe, in the absence of a very pressing need, to interfere with either, or with parties' reasonable investment-backed expectations. Indeed, the leases implicated on the Federal Defendants' motion for voluntary remand were issued between eighteen months and nearly four years ago. *See* Compl., ¶¶ 121, 124, 127, 130, 133. Even the most recent lease sale occurred nearly a year before the Plaintiffs filed the Complaint in this case. Over the intervening months and years, most of which passed without legal challenge to

10

the lease sales, the lessees have expended large sums to obtain the leases, and in oil and gas development preparations in reliance on Federal Defendants' issuance to them of leases.

In these circumstances, ordering vacatur of the challenged leases without a determination that any of the Federal Defendants' twenty-four leasing decisions violated NEPA, and without allowing Federal Defendants their requested opportunity to first consider those NEPA reviews in light of this Court's intervening decision in *Zinke*, would impermissibly wipe out investments; undermine the trust and certainty parties should expect when they participate in government sponsored lease sales and in contracting with the United States; and forestall, if not prevent, the production of domestic energy supplies. *See* Declaration of Lem O. Smith (attached as Exhibit 1 hereto), ¶¶ 4–9. In short, vacatur would cast a huge shadow forward over the United States as a reliable place to do business and undermine lessees' reasonable reliance interests. *See id.*, ¶ 10. *Habitat for Horses v. Salazar*, 745 F. Supp. 2d 438, 457 (S.D.N.Y. 2010) (reliance interests in preparing personnel for planned agency action and retaining independent contractors precluded injunctive relief); *Idaho Power Co. v. FERC*, 312 F.3d 454, 460 (D.C. Cir. 2002) (injury where plaintiff requested "an agency [action] that replaces a certain [contract] outcome with one that contains uncertainty").

Indeed, the status quo ante could not possibly be restored after the Federal Defendants complete the additional NEPA analyses on remand. Preparatory efforts would be lost to those lessees that spent the money in the initial sale to evaluate prospective leases and begin the processes toward operations. *See* Smith Decl., ¶¶ 5, 7, 11–12. Moreover, all of the lessees' sealed bids have been opened in the lease sales, revealing to all competitors each company's closely guarded proprietary geological assessments and bidding strategies. *See id.*, ¶¶ 4–5, 13. Any post-vacatur lease sale would therefore be tainted by publication of the bidding companies'

confidential valuation—based upon proprietary reviews and assessments—of the issued lease blocks, which competitors could use to disadvantage the original lessees and thereby jeopardize large sums previously invested. *See id.*, ¶¶ 13–14.

These economic disruptions weigh against vacatur. "[I]t is clear that courts . . . have repeatedly considered the economic implications of vacatur—including in cases addressing environmental harms." *Standing Rock*, 282 F. Supp. 3d at 104 (citing cases). In equity, economic harm "can be weighed against environmental harm—and in certain instances outweigh it." *Sierra Club, Inc. v. Bostick*, 539 F. App'x 885, 892 (10th Cir. 2013). *See also*, *e.g.*, *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 545 (1987) (hypothetical environmental harm outweighed by "committed" investments); *Wild Rockies*, 375 F. Supp. 3d at 1158 ("economic impact is relevant to the question of whether to vacate on remand"); *cf. Stand Up for California! v. U.S. Dep't of Interior*, No. 12-cv-2039, 2013 WL 12203229, at *3 n.3 (D.D.C. Dec. 16, 2013) (finding that substantial likelihood that agency could reach similar result on remand precluded vacatur, but noting, "[i]n any event" financial consequences of vacatur identified by defendant-intervenor).

Taken together and individually, both prongs of the *Allied-Signal* test weigh in favor of the Federal Defendants' request for a remand of the leasing decisions without vacatur of the issued leases.

## III.     Plaintiffs Fail To Establish An Entitlement To Extraordinary Injunctive Relief.

Nor have Plaintiffs established an entitlement to extraordinary injunctive relief on Federal Defendants' request for voluntary remand. Plaintiffs' requests for vacatur of the issued leases or an injunction against BLM approval of applications for permits to drill ("APDs")

pending completion of the remanded NEPA review, *see* Pls.' Resp. at 5, 9–10, seek injunctive relief.[5]   Plaintiffs have not established—or even attempted to establish—the requisite "clear showing" that they meet the traditional test for such relief.   *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

### A.      Plaintiffs' Request For Vacatur Constitutes A Request For Injunctive Relief.

At the outset, Plaintiffs' requested vacatur is a form of injunctive relief.   In the context of Plaintiffs' APA claims, both vacatur and an injunction would have the identical effect by invalidating the leasing decisions through which Federal Defendants authorized issuance of the leases.   Where, as here, "the practical effect of the two forms of relief will be virtually identical," the propriety of the relief "should be judged by essentially the same standards."   *PGBA, LLC v. United States*, 389 F.3d 1219, 1228 (Fed. Cir. 2004) (quoting *Samuels v. Mackell*, 401 U.S. 66, 71–73 (1971)).   Requiring a plaintiff to satisfy the traditional requirements for extraordinary injunctive relief, thus conforms with the APA's express preservation of "the power or duty of the court to . . . deny relief on any other appropriate . . . equitable ground."   5 U.S.C. § 702. Accordingly, federal courts consistently consider vacatur to be "tantamount to a request for injunctive relief."   *PGBA*, 389 F.3d at 1228.   *See also*, *e.g.*, *WildEarth Guardians*, 870 F.3d at 1239 ("Vacatur of agency action is a . . . form of injunctive relief."); *ForestKeeper v. La Price*, 270 F. Supp. 3d 1182, 1226 (E.D. Cal. 2017) (explaining that vacatur "has the effect of an

---

[5] To the extent the Court may enjoin BLM approval of new APDs pending completion of the NEPA reviews on remand, that injunctive relief weighs against vacatur of the leases.   *See Zinke*, 368 F. Supp. 3d at 85 ("To guard against the possibility that BLM did not choose correctly the first time around, the Court enjoins BLM from issuing any [drilling permits] for the . . . leases while the agency works to substantiate its" prior leasing decisions).   But this relief too would be inappropriate, as discussed in Section I *supra* and Section III(B) *infra*.

injunction, and [plaintiff] therefore 'must establish'—with a 'clear showing'—that it is entitled to such extraordinary relief" (quoting *Winter*, 555 U.S. at 20, 22)).

**B.    Plaintiffs Fail To Establish An Entitlement To Injunctive Relief.**

"An injunction is a matter of equitable discretion[,] it does not follow from success on the merits as a matter of course." *Winter*, 555 U.S. at 32.  Rather, Plaintiffs bear the burden of satisfying the traditional test for injunctive relief by "a clear showing." *Id*. at 22.  *See also id*. at 31–33; *id*. at 22–32 & n.5 (plaintiff not entitled to injunction where it failed to establish balance of equities or public interest *even if* Court assumed success on merits of NEPA claim and irreparable harm); *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998) (applicant must carry burden on all injunction factors).  At bottom, "a court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief," *Amoco Prod.*, 480 U.S. at 542, and "pay particular regard for the public consequences" of an injunction, *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982).  For their part, Plaintiffs have not even attempted such a showing with respect to either vacatur of the leases or Plaintiffs' requested injunction against further APD approvals pending completion of Federal Defendants' NEPA remand review.

At most, Plaintiffs argue that injunctive relief is necessary to preserve environmental resources.  *See* Pls.' Resp. at 8–10.  But the Supreme Court has made clear that the traditional injunctive relief test applies to NEPA violations and environmental injury.  *See Cottonwood Envtl. Law Ctr. v. U.S. Forest Serv.*, 789 F.3d 1075, 1089 (9th Cir. 2015) (citing *Winter* and *Monsanto Co. v. Geertson Seed Farm*s, 561 U.S. 139 (2010)).  Because nothing in NEPA allows a court to put a "thumb on the scales" of injunctive relief, a reviewing court may not, as Plaintiffs' silence would suggest, simply "presume that an injunction is the proper remedy for a NEPA violation . . . ." *Id*. (quotations omitted).

14

Even had Plaintiffs alleged some purported harm, their request for injunctive relief comes too late. The lease sales implicated by Federal Defendants' remand request occurred between nearly four years ago and eighteen months ago, and Plaintiffs filed their complaint nearly a year after the most recent lease sale concluded. *See supra* pp. 10–11. Such delay in seeking extraordinary relief "weighs against a finding of irreparable harm." *Air Transp. Ass'n of Am., Inc. v. Export-Import Bank of the U.S.*, 840 F. Supp. 2d 327, 338 (D.D.C. 2012). *See also*, *e.g.*, *Newdow v. Bush*, 355 F. Supp. 2d 265, 292 (D.D.C. 2005) (explaining that "unexcused delay in seeking extraordinary injunctive relief may be grounds for denial because such delay implies a lack of urgency and irreparable harm"); *Fund for Animals v. Frizzell*, 530 F.2d 982, 987 (D.C. Cir. 1975) (explaining that delay of forty-four days "bolstered" the Court's "conclusion that an injunction should not issue"); *Open Top Sightseeing USA v. Mr. Sightseeing, LLC*, 48 F. Supp. 3d 87, 90–91 (D.D.C. 2014) (finding ninety-five day delay undercut claim of irreparable harm); *Mylan Pharms., Inc. v. Shalala*, 81 F. Supp. 2d 30, 44 (D.D.C. 2000) (finding that delay of two months "militates against a finding of irreparable harm").

Against Plaintiffs' silence and delay, the proposed injunctive relief would undermine (or eliminate) (1) lessees' contractual, property, and reliance interests in the leases and investments in their development, *see supra* pp. 10–11; Smith Decl., ¶¶ 15–18; (2) federal and local government proceeds from bonus and royalty payments on the issued leases;[6] and (3) the local

---

[6] In 2019 alone, the Federal Government received more than $6 billion from federal onshore leasing and development, and disbursed more than $2 billion to state and local governments. *See* U.S. Dep't of the Interior, Office of Natural Resources Revenue, Natural Resources Revenue Data, at https://revenuedata.doi.gov/explore/?dataType=Revenue&mapLevel=State &offshoreRegions=false&period=Fiscal%20Year&year=2019 (detailing sources, amount, and disbursements of oil and gas lease bonus payments and royalties) (last visited Sept. 17, 2020); *id.*, FY 2019 Disbursements, at https://revenuedata.doi.gov/explore/?dataType= Disbursements&mapLevel=State&offshoreRegions=false&period=Fiscal%20Year&year=2019 (continued…)

economic activities spurred by oil and gas investment and development, *see*, *e.g.*, *Diné Citizens Against Ruining Our Env't v. Jewell*, No. 15-cv-0209, 2015 WL 4997207, at *50 (D.N.M. Aug. 14, 2015) ("The oil-and-gas industry is an enormous job creator and economic engine in New Mexico, and shutting down portions of it based on speculation about unproven environmental harms is against the public interest."); *Del. Dep't of Nat. Res. & Envt'l Control v. U.S. Army Corps of Eng'rs*, 681 F. Supp. 2d 546, 563 (D. Del. 2010) (considering localized economic impacts).  Taken together, the public interests and the economic injuries significantly outweigh Plaintiffs' unsupported request for relief.  *See Winter*, 555 U.S. at 23–27 (aggregating harm to non-movants with public interest in denying injunctive relief).

Having failed to make a "clear showing" that Plaintiffs satisfy the traditional test, *Winter*, 555 U.S. at 22, Plaintiffs are not entitled to extraordinary relief.[7]

## IV.    Federal Defendants Have Not Made The Determinations Necessary To Suspend The Challenged Leases.

Plaintiffs' final proposed condition on the proposed voluntary remand asks that this Court direct Federal Defendants to suspend the leases that were issued in the challenged leasing

---

(last visited Sept. 17, 2020).  This Court may take judicial notice of government records and materials available on government websites.  *See*, *e.g.*, *Banks v. Warner*, No. 94-56732, 1995 WL 465773, at *1 (9th Cir. Aug. 7, 1995) ("It is entirely proper for a court to take judicial notice of records and reports of administrative agencies."); *Swindol v. Aurora Flight Scis. Corp.*, 805 F.3d 516, 519 (5th Cir. 2015).  Moreover, the Court may consider extra-record materials in determining whether injunctive relief is appropriate.  *See Eco Tour Adventures, Inc. v. Zinke*, 249 F. Supp. 3d 360, 369 n.7 (D.D.C. 2017) (because "there usually will be no administrative record developed on the[] issues" of injunctive relief, "it will often be necessary for a court to take new evidence" on those issues (quotation and alterations omitted)).

[7] Nor may Plaintiffs attempt to satisfy their affirmative burden to demonstrate an entitlement to the injunctive relief they seek for the first time in reply (or sur-reply) to API's arguments.  *See*, *e.g.*, *Ineos USA LLC v. FERC*, 940 F.3d 1326, 1329 (D.C. Cir. 2019) ("[A]rguments made for the first time in a Reply Brief are generally forfeited."); *Nolen v. FedEx Servs.*, No. 13-6245, 2014 WL 12887530, at *3 (6th Cir. May 28, 2014) (plaintiff could not provide evidence to meet her affirmative burden for the first time in reply brief).

decisions.  *See* Pls.' Resp. at 8–9.  Mirroring Plaintiffs' other conditions, Plaintiffs' final request lacks the necessary legal, factual, and administrative predicate.

The Mineral Leasing Act directs that the nation's oil and gas deposits "be subject to disposition" for leasing, 30 U.S.C. § 181, in order to "promote wise development of these natural resources and to obtain for the public a reasonable financial return . . .," *California Co. v. Udall*, 296 F.2d 384, 388 (D.C. Cir. 1961).  Federal Defendants' authority, in certain circumstances, to suspend a lease thus issued, *see* Pls.' Resp. at 8–9 (citing 43 C.F.R. § 3103.4-4), does not support Plaintiffs' request that this Court impose suspensions upon the remanded leases.  Plaintiffs cite no authority for the proposition that a Court can direct BLM to issue lease suspensions, let alone direct such a result in the absence of any record or briefing on whether the conditions for suspension under the Mineral Leasing Act have been satisfied.

The Mineral Leasing Act authorizes the "Secretary of the Interior, for the purpose of encouraging the greatest ultimate recovery of . . . oil [and] gas . . . and in the interest of conservation of natural resources, . . . to . . . suspend" a lease "whenever ***in his judgment*** the leases cannot be successfully operated . . . ."  30 U.S.C. § 209 (emphasis added).  The authority to suspend thus rests in the Secretary's discretion.  *See also Udall*, 296 F.2d at 388 ("The Secretary of the Interior . . . has a responsibility to insure that these resources are not physically wasted and that their extraction accords with prudent principles of conservation.").  While the Secretary may, "in the interest of conservation, . . . direct . . . or assent to the suspension of operations and production under any lease," the lease term automatically "shall be extended by adding any such suspension period thereto."  30 U.S.C. § 209.

By regulation, the Secretary has delegated implementation of this discretionary suspension authority to BLM.  BLM's implementing suspension regulations are included in a

section designed to offer "[p]roduction [i]ncentives" to lessees.  43 C.F.R. § 3103.4.  Those regulations provide that "[a] suspension of all operations and production *may be* directed or consented to by the authorized officer only in the interest of conservation of natural resources." 43 C.F.R. § 3103.4-4(a) (emphasis added).  Likewise, "[a] suspension of operations only or a suspension of production only *may be* directed or consented to by the authorized officer in cases where the lessee is prevented from operating on the lease or producing from the lease, despite the exercise of due care and diligence, . . . by matters beyond the reasonable control of the lessee." *Id*. (emphasis added).  Whenever the authorized officer does not direct a suspension *sua sponte*, an "[a]pplication[] for any suspension" must be filed with BLM, including "[c]omplete information showing the necessity of" the suspension.  *Id*.

Viewed as a whole, the Mineral Leasing Act and BLM's implementing regulations provide for lease suspensions only upon the existence of prescribed circumstances, and either directed or consented to within the agency's discretion.  Indeed, one of the cases cited by Plaintiffs regarding the availability of a suspension, *see* Pls.' Resp. at 8, notes both that a suspension for conservation of natural resources is typically made pursuant to the request of a lessee, and that "a suspension on the basis of conservation of natural resources . . . is committed to agency discretion."  *Hoyl v. Babbitt*, 129 F.3d 1377, 1380 (10th Cir. 1997).  No exercise of the agency's discretion has occurred here, nor has any record of the requisite factual predicate for a suspension been developed.  That, as Plaintiffs' concede, "BLM recently *exercised its authority* to suspend leases" in a different case "as part of a settlement," Pls.' Resp. at 9 (emphasis added), confirms that a unilateral judicial direction of a suspension is inappropriate in this case.

**CONCLUSION**

For the foregoing reasons, Plaintiffs' proposed conditions upon the Federal Defendants' requested voluntary remand of twenty-four leasing decisions should be rejected, and Federal Defendants' motion for voluntary remand without vacatur should be granted.

Respectfully submitted,

*/s/  Steven J. Rosenbaum*
Steven J. Rosenbaum
Bradley K. Ervin
COVINGTON & BURLING, LLP
One CityCenter
850 Tenth St., N.W.
Washington, D.C. 20001
Phone:  (202) 662-6000
Fax:  (202) 662-6291
srosenbaum@cov.com

September 21, 2020

*Attorneys for Intervenor-Defendant*
*American Petroleum Institute*

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of September, 2020, I caused a true and correct copy of the foregoing to be filed with the Court electronically and served by the Court's CM/ECF System upon:

Samantha Ruscavage-Barz
Daniel L. Timmons
WildEarth Guardians
301 N. Guadeloupe Street, Suite 201
Santa Fe, NM 87501
Tel: (505) 410-4180
sruscavagebarz@wildearthguardians.org
dtimmons@wildearthguardians.org

Shiloh S. Hernandez
Western Environmental Law Center
103 Reeder's Alley
Helena, MT 59601
Tel: (406) 204-4861
hernandez@westernlaw.org

Kyle Tisdel
Western Environmental Law Center
208 Paseo del Pueblo Sur, Suite 602
Taos, NM 87571
Tel: (575) 613-8050
tisdel@westernlaw.org

*Counsel for Plaintiffs*

Michelle-Ann C. Williams
Michael Sawyer
Environment & Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Tel: (202) 305-0420
Michelle-Ann.Williams@usdoj.gov
Michael.Sawyer@usdoj.gov

*Counsel for Federal Defendants*

Michael VanWormer
James C. Kaste
Wyoming Attorney General's Office
2320 Capitol Avenue
Cheyenne, WY 82002
Tel: (307) 777-6199
Fax: (307) 777-3542
matt.vanwormer@wyo.gov
james.kaste@wyo.gov

*Counsel for Defendant-Intervenor State of Wyoming*

Alec W. Farr
Bryan Cave LLP
1155 F Street, N.W., Suite 700
Washington, D.C. 20001
Tel: (202) 508-6053
Fax: (202) 508-6200
awfarr@bclplaw.com

Ivan L. London
Bryan Cave LLP
1700 Lincoln St., Suite 4100
Denver, CO 80203
Tel: (303) 866-0622
ivan.london@bryancave.com

1

*Counsel for Defendant-Intervenor Western Energy Alliance*

/s/  *Steven J. Rosenbaum*
Steven J. Rosenbaum