# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WILDEARTH GUARDIANS, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DEBRA HAALAND, *et al.*, <br><br> Defendants, <br><br> and <br><br> AMERICAN PETROLEUM INSTITUTE, *et al.*, <br><br> Intervenor-Defendants. | No. 1:20-cv-00056-RC |

## INTERVENOR-DEFENDANT AMERICAN PETROLEUM INSTITUTE'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS IN PART

Steven J. Rosenbaum
Bradley K. Ervin
COVINGTON & BURLING, LLP
One CityCenter
850 Tenth St., N.W.
Washington, D.C. 20001
Phone: (202) 662-6000
Fax: (202) 662-6291
srosenbaum@cov.com

*Attorneys for American Petroleum Institute*

September 20, 2021

**TABLE OF CONTENTS**

ARGUMENT ........................................................................................................................... 1

I.  The MLA's Statute of Limitations Bars Plaintiffs' Montana Lease Sale Challenges. ................................................................................................................. 1

   A.  Section 226-2 Applies to Plaintiffs' NEPA Claims Brought Under the APA. .......................................................................................................... 1

   B.  Plaintiffs Do Not Qualify for the Extraordinary Remedy of Equitable Tolling. ..................................................................................................... 7

CONCLUSION ...................................................................................................................... 9

# TABLE OF AUTHORITIES

**<u>Cases</u>**

*AT&T Inc. v. FCC*,
  452 F.3d 830 (D.C. Cir. 2006) .................................................................................................. 4

*Boling v. United States*,
  220 F.3d 1365 (Fed. Cir. 2000) ................................................................................................ 9

*Bowden v. United States*,
  106 F.3d 433 (D.C. Cir. 1997) .................................................................................................. 8

*Chung v. U.S. Dep't of Justice*,
  333 F.3d 273 (D.C. Cir. 2003) .................................................................................................. 8

*Conservation Law Found. v. Mineta*,
  131 F. Supp. 2d 19 (D.D.C. 2001) ............................................................................................ 3

*Exxon Mobil Corp. v. Allapattah Serv., Inc.*,
  545 U.S. 546 (2005) .................................................................................................................. 6

*Galloway v. Watt*,
  185 F. Supp. 3d 130 (D.D.C. 2016) .......................................................................................... 8

*Harvey v. Udall*,
  384 F.2d 883 (10th Cir. 1967) .............................................................................................. 1, 5

*Irwin v. Dep't of Veterans Affairs*,
  498 U.S. 89 (1990) ............................................................................................................ 7, 8, 9

*Jackson v. Modly*,
  949 F.3d 763 (D.C. Cir. 2020) .............................................................................................. 7, 8

*Jones v. Gordon*,
  792 F.2d 821 (9th Cir. 1986) .................................................................................................... 3

*Menominee Indian Tribe of Wisconsin v. United States*,
  577 U.S. 250 (2016) .................................................................................................................. 9

*Musacchio v. United States*,
  577 U.S. 237 (2016) .................................................................................................................. 7

*Norman v. United States*,
  467 F.3d 773 (D.C. Cir. 2006) .................................................................................................. 9

*Ouachita Watch League v. U.S. Forest Serv.*,
  No. 11-cv-00425, 2014 WL 11498055 (E.D. Ark. Dec. 15, 2014) .......................................... 4

*Park County Resource Council v. U.S. Department of Agriculture*,
  817 F.2d 609 (10th Cir. 1987) .......................................................................................... 2, 3, 4

*S. Utah Wilderness All. & Nat. Res. Def. Council v. Bur. of Land Mgmt.*,
  No. 08-cv-64, 2008 WL 5245492 (D. Utah, Dec. 16, 2008) .................................................... 3

*Authorities upon which Intervenor-Defendant chiefly relies.

*Turtle Island Restoration Network v. U.S. Dep't of Commerce*,
  438 F.3d 937 (9th Cir. 2006) .............................................................................. 2, 3, 5

*Washington v. Washington Metropolitan Area Transit Auth.*,
  160 F.3d 750 (D.C. Cir. 1998) ..................................................................................... 8

**Statutes**

*30 U.S.C. § 226-2 ........................................................................................................ 1, 5

Act of Feb. 25, 1920, ch. 85, § 32, 41 Stat. 437 ........................................................... 1

**Other Authorities**

Conf. Rep. No. 86-2135 (1960), 1960 WL 4898, *as reprinted in* 1960 U.S.C.C.A.N. 3313 ......... 8

S. Rep. No. 86-1549 (1960), 1960 WL 4897, *as reprinted in* 1960 U.S.C.C.A.N. 3313 ............... 8

# INTRODUCTION

Despite their contemporaneous knowledge of the two Montana leasing decisions challenged in this lawsuit, Plaintiffs WildEarth Guardians ("WildEarth") and Physicians for Social Responsibility (collectively, "Plaintiffs") waited many months to file their challenges to those lease sales. Those challenges come too late and should be dismissed.

In the Mineral Leasing Act ("MLA"), Congress both directed Federal Defendants through quarterly lease sales "to promote the orderly development of the oil and gas deposits in the publicly owned lands of the United States through private enterprise," *Harvey v. Udall*, 384 F.2d 883, 885 (10th Cir. 1967); *see also* Act of Feb. 25, 1920, ch. 85, § 32, 41 Stat. 437 (purpose of MLA is "[t]o promote the mining of . . . oil . . . on the public domain"), and sought to promote this developmental purpose by foreclosing any lawsuit "contesting a decision of the Secretary involving any oil and gas lease" unless the lawsuit is "taken within ninety days" of the Secretary's final decision. 30 U.S.C. § 226-2 ("Section 226-2"). As the American Petroleum Institute ("API") demonstrated in its Memorandum in Support of Motion to Dismiss in Part ("Opening Memorandum" or "API Mem.") (Dkt. No. 55-1), Section 226-2 applies to Plaintiffs' National Environmental Policy Act ("NEPA") claims brought pursuant to the Administrative Procedure Act ("APA"). *See* API Mem. at 6–17. Section 226-2 accordingly bars Plaintiffs' challenges to the leasing decisions for the Montana lease sales.

# ARGUMENT

I. **The MLA's Statute of Limitations Bars Plaintiffs' Montana Lease Sale Challenges.**

   A. **Section 226-2 Applies to Plaintiffs' NEPA Claims Brought Under the APA.**

API's Opening Memorandum demonstrated, among other things, that (1) the APA supplies Plaintiffs' cause of action, (2) a specific statute of limitations serves to displace the general six-year limitations period otherwise applicable to causes of action brought under the

1

APA, (3) Section 226-2's plain terms apply broadly to bar after 90 days a challenge to "a decision . . . involving any oil and gas lease" like Plaintiffs' challenges to the Montana leasing decisions in this case, (4) courts routinely apply such specific limitations to NEPA claims, and (5) the sole Court of Appeals decision holding otherwise—*Park County Resource Council v. U.S. Department of Agriculture*, 817 F.2d 609 (10th Cir. 1987)—is not persuasive, and has been fatally undermined by subsequent caselaw regarding the nature of NEPA claims, and explicitly negating *Park County*'s reasoning. *See* APA Mem. at 6–17; *Turtle Island Restoration Network v. U.S. Dep't of Commerce*, 438 F.3d 937, 946–47 (9th Cir. 2006). Plaintiffs' challenges to the Montana leasing decisions in this case are therefore time-barred. *See* API Mem. at 17.

Plaintiffs do not contest the nature of their APA cause of action or NEPA claims, or the application of specific limitations periods to NEPA claims through the APA. Rather, Plaintiffs principally contend that "courts have uniformly rejected application of the MLA's 90-day limitations period to NEPA claims[.]" Plaintiffs' Opposition ("Pls.' Opp.") (Dkt. No. 65), at 2. But Plaintiffs point almost exclusively to district court decisions within the Tenth Circuit, *see* Pls.' Opp. at 3–4, 10, which are compelled to follow the holding in *Park County* whether or not it was misguided and wrongly decided. *See* API Mem. at 14–17 (explaining that *Park County*'s reasoning was "misplaced" at the time it was decided and has "been further undermined during the intervening [34] years"). *See also* Pls.' Opp. at 5 (acknowledging that *Park County* "continues to bind district courts in the Tenth Circuit"). Plaintiffs' resulting defense of *Park County*, *see* Pls.' Opp. at 5, is unpersuasive.

First, *Park County* rested on a purported distinction between substantive challenges to agency action and NEPA challenges to agency action made by the Ninth Circuit in *Jones v. Gordon*, 792 F.2d 821 (9th Cir. 1986). *See* APA Mem. at 14–15. *See also, e.g.*, *Park County*,

817 F.2d at 616 ("The thrust of our reasoning parallels that of the Ninth Circuit in *Jones v. Gordon*[.]").  The Ninth Circuit has since made clear that such a distinction—and, particularly, *Park County*'s application of that distinction—between substantive and NEPA claims reflects a "misapplication of *Jones*."  *Turtle Island*, 438 F.3d at 947 n.9.  Indeed, *Turtle Island* expressly criticized *Park County*'s application of *Jones*—which considered a statute of limitations provision limited narrowly to the "terms and conditions" of certain permits, *Jones*, 792 F.2d at 824 (quotation omitted)—to the wholly different "broad wording" of Section 226-2's limitations language.  *See Turtle Island*, 438 F.3d at 947 & n.9.

For their part, Plaintiffs conclusorily assert that "*Turtle Island* does not compel a different result" by largely ignoring *Turtle Island*'s reasoning and its express criticism of *Park County*'s misapplication of *Jones* to the language of Section 226-2 itself.  *See* Pls.' Opp. at 5.  To the extent Plaintiffs instead point to district court decisions finding *Park County* "persuasive," those decisions were either issued by a district court in the Tenth Circuit, *see* Pls.' Opp. at 3–4 (citing *S. Utah Wilderness All. & Nat. Res. Def. Council v. Bur. of Land Mgmt.*, No. 08-cv-64, 2008 WL 5245492 (D. Utah, Dec. 16, 2008)), or suffered the same errors as *Park County*, *see* Pls.' Opp. at 5–6 (citing *Conservation Law Found. v. Mineta*, 131 F. Supp. 2d 19, 24 (D.D.C. 2001)).  Indeed, the Ninth Circuit in *Turtle Island* directly criticized *Conservation Law Foundation* for incorrectly relying on *Jones* for a purported "general rule" distinguishing NEPA claims from other claims for limitations purposes.  *See Turtle Island*, 438 F.3d at 947 & n.9 ("*Jones* flowed not from any general proposition about NEPA but from a plain reading of the . . . jurisdictional provision" that was at issue).[1]

---

[1] *Ouachita Watch League v. U.S. Forest Serv.*, No. 11-cv-00425, 2014 WL 11498055 (E.D. Ark. Dec. 15, 2014), *see* Pls.' Opp. at 10, mechanically applied the general 6-year statute of (continued…)

Moreover, despite their conclusory statements that *Park County* remains "persuasive," *see* Pls.' Opp. at 5, Plaintiffs do not address the misunderstanding of NEPA claims—in particular, the belief that no statute of limitations applied to NEPA claims—that also underlay the Tenth Circuit's decision in *Park County*. *Compare* API Mem. at 15–16 *with* Pls.' Opp. at 2–10. With its underlying bases having eroded over the years, *Park County* cannot sustain Plaintiffs' attempts to evade the plain application of Section 226-2 to their challenges to Federal Defendants' Montana leasing decisions.[2]

Although construction of Section 226-2 must "begin[], as always, with the plain language of the statute," *AT&T Inc. v. FCC*, 452 F.3d 830, 835 (D.C. Cir. 2006) (quotation omitted), Plaintiffs—like *Park County* before them, *see Park County*, 817 F.2d at 616–17 (relying on *Jones v. Gordon* and statement in House of Representatives report)—pay little heed to Section 226-2's language:

---

limitations applicable to APA claims without analyzing the specific language of the MLA statute of limitations. *Ouachita Watch* never cites or discusses, much less distinguishes, the myriad decisions applying a shorter statute of limitations to NEPA claims. *See* API Mem. at 11–12, 16.

[2] Plaintiffs' brief and unsupported attempt to disassociate their claims from "leasing decisions," *see* Pls.' Opp. at 9–10, misses the mark. To be sure, Plaintiffs claim that Federal Defendants conducted inadequate NEPA reviews; but those allegedly inadequate reviews were made to consider—and would not exist in the absence of—Federal Defendants' leasing decisions. Plaintiffs' Complaint reflects that the leasing decisions are the core of their claims and intertwined with the NEPA reviews because, among other things, Plaintiffs ask this Court to "[d]eclare that Federal Defendants' leasing authorizations challenged herein are arbitrary and violate NEPA and its implementing regulations," "[v]acate Federal Defendants' leasing authorizations and accompanying EAs," and "[s]et aside and vacate all of the leases issued pursuant to the leasing authorizations challenged herein." *See* Compl. (Dkt. No. 1), Relief Requested, ¶¶ A–C. By its terms, Section 226-2 applies to any "decision . . . involving any oil and gas lease," language that clearly encompasses the dispute here. *See* API Mem. at 7–9, 14–16.

> No action contesting a decision of the Secretary involving any oil and gas lease shall be maintained unless such action is commenced or taken within ninety days after the final decision of the Secretary relating to such matter.

30 U.S.C. § 226-2. That prohibition is broad, *see* API Mem. at 8–9; *Turtle Island*, 438 F.3d at 947 n.9, and does not limit its scope, as Plaintiffs claim, to causes of action brought directly under the MLA.

Disregarding the language of Section 226-2, Plaintiffs instead claim that Section 226-2 must be narrowly construed because it is not part of a "fine-tuned" or "'well-oiled' statutory scheme" like the Magnuson Act that was at issue in *Turtle Island*. *See* Pls.' Opp. at 6–7 (quoting *Turtle Island*, 438 F.3d at 948). But Section 226-2 is part of a "fine-tuned" statutory scheme that directs Federal Defendants to conduct quarterly lease sales in order "to promote the orderly development of the oil and gas deposits in the publicly owned lands of the United States through private enterprise," *see Harvey*, 384 F.2d at 885; *supra* p. 1; API Mem. at 1–3, and then promotes this developmental purpose by foreclosing any lawsuit "contesting a decision of the Secretary involving any oil and gas lease" unless the lawsuit is "taken within ninety days" of the Secretary's final decision.

More importantly, *Turtle Island* made clear that, in considering the scope of a limitations provision, "it is the language of the specific . . . statute . . . that controls." *Turtle Island*, 438 F.3d at 947. The Ninth Circuit merely explained that the structure of the Magnuson Act—to which Plaintiffs point—"is consistent with [the Court's] reading of the time limit." *Id*. Notably, the Ninth Circuit noted that Section 226-2 included "broad wording," *id*. at 947 n.9, which was comparable to the Magnuson Act provision that did not "purport[] to distinguish between procedural and substantive challenges," *id*. at 946. Plaintiffs concede the centrality of the statutory language. *See* Pls.' Opp. at 8–9 (citing *Exxon Mobil Corp. v. Allapattah Serv., Inc.*, 545 U.S. 546, 568 (2005)). For this reason, Plaintiffs' challenge to API's reading of the

5

legislative history, *see* Pls.' Opp. at 7–9, is irrelevant in the face of Section 226-2's broad language.

At any rate, Plaintiffs misinterpret Section 226-2's legislative history.  As detailed in API's Opening Memorandum, *see* API Mem. at 2–3, Congress amended the MLA in 1960 to, among other things, include Section 226-2's statute of limitations.  The Senate first proposed a statute of limitations in its amendment in the nature of a substitute to the original bill from the House of Representatives.  *See* S. Rep. No. 86-1549 (1960), 1960 WL 4897, *as reprinted in* 1960 U.S.C.C.A.N. 3313, 3313.  The Senate proposed "[a] statute of limitations providing that any action under the Administrative Procedure Act to review a decision of the Secretary involving an oil and gas lease must be initiated within 90 days after the final decision after the final decision of the Secretary[.]" *Id*. at 3317.

Having passed competing bills, a Conference Committee of the Senate and House worked out the final statute.  *See* Conf. Rep. No. 86-2135 (1960), 1960 WL 4898, *as reprinted in* 1960 U.S.C.C.A.N. 3313, 3335.  The Conference Report makes clear that "[t]he conferees accepted the principle of the Senate language" providing for a statute of limitations.  *Id*. at 3337.  But the Conference Committee "reworked" the language.  *Id*.

For their part, Plaintiffs read too much into this "rework[ing]," and infer from the fact that Section 226-2's final language does not expressly mention the APA that the Conference Committee intended to "constrain[] application of the MLA's limitations period" only to claims brought under the MLA. Pls.' Opp. at 8.  Plaintiffs' unsupported inference, however, contradicts the Conference Committee's stated "accept[ance]" of the "principle of the Senate language," 1960 U.S.C.C.A.N. at 3337, which aimed to apply a limitations period, at the very least, on "action[s] under the Administrative Procedure Act," 1960 U.S.C.C.A.N. at 3317.  Indeed, by

eliminating any specific reference to the APA, the Conference Committee returned a broader final version of Section 226-2—broad language that bars any "action" regardless of the source of the cause of action. As the Senate explained in passing its original statute of limitations, "[s]uch a provision will remove a potential cloud on acreage subject to leasing." *Id*. Plaintiffs' late-filed challenges create just such a cloud.

### B. Plaintiffs Do Not Qualify for the Extraordinary Remedy of Equitable Tolling.

Having failed to comply with Section 226-2, Plaintiffs request that the Court "allow this litigation to proceed under the doctrine of equitable tolling." Pls.' Opp. at 11. To be sure, *see* Pls.' Opp. at 11–12, because "[s]tatutes of limitations and other filing deadlines ordinarily are not jurisdictional," *Musacchio v. United States*, 577 U.S. 237, 246 (2016) (quotation omitted), equitable tolling is potentially available to relieve a time-barred litigant. *See, e.g., Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95–96 (1990) (recognizing availability of equitable tolling in suits against the Government). Plaintiffs mistake that potential availability, however, with its application. Equitable tolling remains "appropriate only in rare circumstances," *Jackson v. Modly*, 949 F.3d 763, 778 (D.C. Cir. 2020) (quotation omitted), and is granted "only sparingly," *Irwin*, 498 U.S. at 90, 96.

The facts to which Plaintiffs point fall far short of the mark. Whether Plaintiffs filed their NEPA comments in a timely fashion, *see* Pls.' Opp. at 11, or did or did not act diligently in other litigation involving other lease sales, *see id.*, is simply irrelevant to whether Plaintiffs could possibly be excused from their clear-cut obligation to have filed their challenges to the Montana leasing decisions at issue in this lawsuit within 90 days. Nor does it matter whether BLM itself took more than 90 days to take certain actions with respect to more than two dozen leasing

decisions, *see id.* at 12; it is Plaintiffs, not BLM, that Congress subjected to the 90-day statute of limitations here.

At bottom, Plaintiffs claim that equitable tolling is warranted because they relied on the fact that Federal Defendants and industry intervenors did not move to dismiss prior lawsuits under Section 226-2, and they believed that *Park County* and its Tenth Circuit progeny settled the inapplicability of Section 226-2 to NEPA claims. *See id*. at 12–13. Plaintiffs' arguments do not "meet the high threshold for applying this rare remedy." *Jackson*, 949 F.3d at 778.

First, Plaintiffs identify no—and there was no—affirmative misconduct or other action by opposing counsel in other lease sale cases that prevented Plaintiffs from filing suit within Section 226-2's limitations period. *See*, *e.g.*, *Irwin*, 498 U.S. at 96 (noting equitable tolling may be justified where adversary "tricked" a party into missing limitations period through "misconduct"); *Chung v. U.S. Dep't of Justice*, 333 F.3d 273, 279 (D.C. Cir. 2003) (equitable tolling "applies most commonly when the plaintiff despite all due diligence is unable to obtain vital information bearing on the existence of his claim" (quotation omitted)); *Washington v. Washington Metropolitan Area Transit Auth.*, 160 F.3d 750, 752–53 (D.C. Cir. 1998) ("[E]quitable principles favor tolling where, for example, a defendant engaged in affirmative misconduct or misled a plaintiff about the running of a limitations period" (quotations omitted)); *Bowden v. United States*, 106 F.3d 433, 438 (D.C. Cir. 1997) (listing affirmative actions of adversary that may support equitable tolling); *Galloway v. Watt*, 185 F. Supp. 3d 130, 134 (D.D.C. 2016) (distinguishing the case from instances of "attorney misconduct" or "misrepresentation" that may support equitable tolling). That Plaintiffs can state a purported excuse for ignoring Section 226-2, is of no moment. *See Norman v. United States*, 467 F.3d 773,

775–76 (D.C. Cir. 2006) (noting that equitable tolling is a rare remedy that is not applicable to "a garden variety claim of excusable neglect" (quoting *Irwin*, 498 U.S. at 96)).[3]

Second, neither the Tenth Circuit's *Park County* decision nor the numerous Tenth Circuit district court decisions that were bound to follow that decision are binding precedent on this Court, where Plaintiffs chose to file their claims. And, as explained above, the Ninth Circuit's *Turtle Island* decision had already expressly criticized *Park County*, including its central reliance on the Ninth Circuit's earlier decision in *Jones v. Gordon* in applying Section 226-2. *See supra* pp. 2–6; *Boling v. United States*, 220 F.3d 1365, 1374 (Fed. Cir. 2000) (noting lack of "authority which would suggest that the presence of adverse precedent automatically leads to equitable tolling").

Plaintiffs' mistaken reliance on questionable precedent in another Circuit falls well short of clearing the high bar necessary to justify equitable tolling. *See Menominee Indian Tribe of Wisconsin v. United States*, 577 U.S. 250, 257–58 (2016) (explaining that party's mistaken view of the law did not support equitable tolling, and differed from "relying on *actually binding* precedent that is subsequently reversed").[4]

## CONCLUSION

For the foregoing reasons, as well as the reasons set out in API's Motion, this Court should dismiss plaintiffs' challenges to the challenged Montana lease sales with prejudice.

---

[3] At any rate, the answers to Plaintiffs' complaints consistently raised non-compliance with applicable statutes of limitations as an affirmative defense. *See* API Answer to Compl. (Dkt. No. 28), at 41. *See also Wild Earth Guardians, et al. v. Jewell, et al.*, No. 16-cv-01724-RC, API Abbreviated Answer to Suppl. Compl. (Dkt. No. 188), at 7; *WildEarth Guardians v. Haaland*, No. 1:21-cv-00175, API Answer to Compl. (Dkt. No. 20-1), at 43.

[4] Notably, in *Menominee Indian Tribe*, the Supreme Court did not decide that reversal of binding precedent justified equitable tolling. *See* 577 U.S. at 258 n.4. The Court merely noted the Court of Appeals' "speculat[ion]" that such a situation "might merit tolling." *Id*.

|  |  |
|---|---|
| September 20, 2021 | Respectfully submitted,<br><br>*/s/ Steven J. Rosenbaum*<br>Steven J. Rosenbaum<br>  D.C. Bar No. 331728<br>Bradley K. Ervin<br>  D.C. Bar No. 982559<br>COVINGTON & BURLING, LLP<br>One CityCenter<br>850 Tenth St., N.W.<br>Washington, D.C. 20001<br>Phone:  (202) 662-6000<br>Fax:  (202) 662-6291<br>srosenbaum@cov.com<br><br>*Attorneys for American Petroleum Institute* |

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of September, 2021, I caused a true and correct copy of the foregoing to be filed with the Court electronically and served by the Court's CM/ECF System upon all counsel of record.

                                                        */s/ Steven J. Rosenbaum*
                                                        Steven J. Rosenbaum